IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America, | Crim. No. 4:03-cr-00106-TLW |
| v. | **Order** |
| Luther Joe Cyrus | |

This matter is before the Court on Defendant Luther Joe Cyrus's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 165. For the reasons set forth below, Cyrus's motion is denied.

### PROCEDURAL HISTORY

On December 17, 2003, a jury convicted Cyrus of being a felon in possession of a firearm. ECF No. 62. He was sentenced as an armed career criminal to 324 months of imprisonment followed by a 5-year term of supervised release. ECF No. 72. He filed a direct appeal, and the Fourth Circuit remanded for resentencing in light of the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Cyrus*, 132 F. App'x 441, 442 (4th Cir. 2005).

On remand, the Court imposed the same 324-month sentence. ECF No. 90. Cyrus filed a direct appeal, but the Fourth Circuit dismissed his appeal as untimely. *United States v. Cyrus*, 230 F. App'x 349, 350 (4th Cir. 2007). He did not file a petition for a writ of certiorari with the Supreme Court.

Cyrus then filed a § 2255 petition. ECF No. 132. After briefing, the Court granted the Government's motion for summary judgment and dismissed his petition.

1

ECF No. 145. He filed a direct appeal, but the Fourth Circuit declined to issue a certificate of appealability and dismissed the appeal. *United States v. Cyrus*, 512 F. App'x 365, 366 (4th Cir. 2013). He then filed a petition for a writ of certiorari with the Supreme Court, which the Supreme Court denied. *Cyrus v. United States*, 571 U.S. 876 (2013).

Cyrus filed a second § 2255 petition in which he alleged that his conviction for being a felon in possession of a firearm was invalid in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). ECF No. 164. However, he did not receive permission from the Fourth Circuit under 28 U.S.C. § 2244 to file a successive petition. Accordingly, his successive § 2255 petition was denied. ECF No. 184.

Shortly after filing his successive § 2255 petition Cyrus filed the instant motion for compassionate release.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 2021 WL 1216543 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

3

## DISCUSSION

### I. THE PARTIES' ARGUMENTS

Before addressing the merits of Cyrus's motion, the Court will first review the arguments put forth by both Cyrus and the Government.

#### A. *Cyrus's Arguments in Support of His Motion*

Cyrus's motion primarily argues that a sentence reduction is appropriate due to (1) his assertion that he is actually innocent under the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), (2) his belief that he has been penalized with a long sentence for exercising his constitutional right to trial, (3) the combined impact of COVID-19 at the facility where he is imprisoned and his medical conditions, which he asserts make him vulnerable to becoming seriously ill from COVID-19, and (4) his belief that he has been rehabilitated, would not be a danger to the community if released, and suggestion that the 18 U.S.C. § 3553(a) factors weigh in favor of release. ECF No. 165 at 2-3.

#### B. *The Government's Opposition*

The Government asserts that Cyrus's motion should be denied because, "Cyrus's asserted medical conditions and the minimal documentation provided do not rise to the level of an 'extraordinary and compelling reason' to warrant a sentence reduction under 3582(c)." ECF No. 173 at 10. The Government further asserts that, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Id.* at 9. (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Yet, even if Cyrus

has identified "extraordinary and compelling reasons," the Government asserts that he is not entitled to relief because he "has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors." *Id.* at 11. The Government cites the seriousness of Cyrus's federal offense (the instant offense), his criminal history, and his disciplinary record within the BOP in support of its argument. *Id.* at 9-12.

## II.   THE COURT'S REVIEW

The Court's review will first begin with a determination of whether Cyrus has met the "extraordinary and compelling reasons" standard before turning to an analysis of the relevant § 3553(a) factors.

### A.   *Extraordinary and Compelling Reasons*

As noted above, Cyrus has set forth four grounds which he believes are extraordinary reasons warranting a sentence reduction: (1) his assertion that he is actually innocent under the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), (2) his belief that he has been penalized with a long sentence for exercising his constitutional right to trial, (3) the purported risks posed by the COVID-19 pandemic and his underlying medical conditions, and (4) his contention that he has been rehabilitated and would not be a danger to the community if released. ECF No. 165 at 2-3. The Court will review each of these arguments in turn, before proceeding to an analysis of the relevant § 3553(a) factors.

i.   The *Rehaif* decision and Cyrus's claim of actual innocence

Cyrus argues that he is actually innocent of violating 18 U.S.C § 922(g) in light of *Rehaif* and that his actual innocence constitutes an "extraordinary and compelling reason" warranting relief. *Id*. The Court has carefully reviewed both the record and the relevant caselaw and concludes that Cyrus's claim of actual innocence does not constitute an "extraordinary and compelling reason" justifying relief because he is not actually innocent of violating § 922(g). Even if this claim constitutes an "extraordinary and compelling reason," no relief is warranted.

Section 922(g) prohibits felons from possessing firearms and works in conjunction with § 924. In relevant part, § 924(a)(8) provides: "Whoever knowingly violates subsection [] (g) of section 922 shall be fined as provided in this title, imprisoned not more than 15 years, or both." 18 U.S.C. § 924(a)(8). Always beginning with the word "who," subsection (g) of § 922, in turn, has nine subsections listing nine statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Id.* § 922(g). Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." *Id.* § 922(g)(1). In *Rehaif*, the Supreme Court held that the word "knowingly" as used in § 924 applies to both a defendant's conduct and status. 139 S. Ct. at 2200. As distilled by the Court, *Rehaif* held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government

6

must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.*

After *Rehaif,* the Fourth Circuit decided *United States v. Gary*, 954 F.3d 194, 199 (4th Cir. 2020). *Gary* was a direct appeal and not a collateral relief action or § 3582 proceeding. There, the Fourth Circuit found that the failure to inform the defendant, Gary, of the knowledge element was plain error. *Id.* at 202. The court also held that these "*Rehaif* errors" are structural and require vacatur per se. *Id.* The Supreme Court consolidated review of *Gary*, which led to the decision in *Greer v. United States*, 141 S. Ct. 2090 (2021). In doing so, the Supreme Court held that a district court's failure to address a defendant's knowledge of his status as a felon was not a structural error requiring automatic reversal and, instead, was subject to plain error review where the knowledge issue was not preserved for appeal. *Greer,* 141 S. Ct. at 2096. The *Greer* court ruled that to satisfy plain error review, a defendant carries the burden of establishing a reasonable probability that a different outcome would have occurred had the defendant been aware of the knowledge element. *Id.* Notably, in the setting of a "felon-in-possession case where the defendant was in fact a felon when he possessed firearms," the Supreme Court stated that "the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon." *Id.* at 2097 (citing *Gary*, 963 F.3d at 423) (Wilkinson, J., concurring in denial of *reh'g en banc*) ("Felony status is simply not the kind of thing that one forgets.")).

7

The Supreme Court stated, "[i]n short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a 'reasonable probability' that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different." *Id.* Clearly, the *Greer* decision impacted the application of both the *Rehaif* and *Gary* principles in felon-in-possession case analysis.

Cyrus filed his § 3582 motion prior to the Supreme Court's decision in *Greer*. However, in light of the decision in *Rehaif* and, especially in light of the decision in *Greer*, Cyrus cannot credibly assert that, at the time he possessed the firearm that gave rise to his felon in possession conviction, he was unaware he had been convicted of a crime punishable by imprisonment for a term exceeding one year. In *Greer*, the Supreme Court addressed the circumstances in which *Rehaif* relief would be available. The Supreme Court stated in *Greer* that, "as many courts have recognized and as common sense suggests, individuals who are convicted felons ordinarily know they are convicted felons." *Greer*, 141 S. Ct. at 2095. Cyrus was found guilty of the instant offense following a jury trial. The Government could have proven under the standards set forth in *Greer* that Cyrus knew he was a felon at the time he possessed a firearm. There is overwhelming evidence to establish that element. *see United States v. Norman*, No. CR 7:17-527-HMH, 2020 WL 4043648, at *8 (D.S.C. July 17, 2020); *See also Rehaif*, 139 S. Ct. at 2198 (internal quotation marks and citation omitted) (noting that the Government's obligation to prove knowledge is not "burdensome," as "knowledge can be inferred from circumstantial evidence."). *See*

*also United States v. Miller*, No. 21-4367, 2023 WL 4673749 (4th Cir. July 21, 2023).

The evidence that establishes Cyrus's knowledge of his felon status is substantial, even overwhelming in this case. At the time he committed the instant offense, Cyrus had been sentenced to more than a year in prison on two separate occasions. First, the Presentence Investigation Report ("PSR") sets forth a 1977 conviction for aggravated assault and battery. PSR ¶ 55. The description of the conduct that led to the conviction states "Luther Cyrus shot Ernest Gordon in the leg with a .22 caliber pistol…." *Id.* His sentence was three (3) years suspended upon sixty (60) days and three (3) years' probation. *Id.* It is reasonable to conclude that Cyrus knew he shot someone with a firearm and that the penalty for doing so would carry a sentence of greater than one year, particularly as he was sentenced to three (3) years, obviously more than a year. The suspension to a lesser term in custody is not relevant. Neither *Rehaif* nor *Greer* provide any factual or legal support for his position that he was "actually innocent."

Additionally, the PSR reflects that Cyrus was convicted of three (3) counts of trafficking cocaine and one (1) count of criminal conspiracy to traffic in cocaine. PSR ¶ 57. With respect to each count of conviction, his sentences were ten (10) years concurrent, twenty-five (25) years concurrent, ten (10) years concurrent, and twenty-five (25) years mandatory. *Id.* As *Greer* observes, ". . . . If a person is a felon, he ordinarily knows he is a felon." *Greer*, 141 S. Ct. at 2095 (citing *Gary*, 963 F.3d at 423). Cyrus knew he was sentenced to twenty-five (25) years and ten (10) years on numerous drug convictions and, as noted earlier, felony status is not the kind of thing

9

one forgets. Having significant sentences imposed on him, and having served some thirteen (13) years in prison on serious drug convictions makes it easy to conclude Cyrus knew he was a convicted felon. Again, *Rehaif* and *Greer* provide no basis for relief in light of the sentences imposed when Cyrus shot an individual and was sentenced to a significant number of years in prison for drug convictions.

Moreover, other circuits have found that *Rehaif* errors, in the context of trials, do not affect a defendant's substantial rights. *See United States v. Miller*, 954 F.3d 551, 558-60 (2d Cir. 2020); *United States v. Hollingshed*, 940 F.3d 410, 415-16 (8th Cir. 2019); *United States v. Reed*, 941 F.3d 1018, 1021-22 (11th Cir. 2019).

Accordingly, based on the Court's review of applicable case law and relevant portions of the record, including the details outlined regarding prior convictions, it finds that Cyrus cannot carry his burden of showing a "reasonable probability" that, but for any alleged *Rehaif* error, the outcome of the district court proceedings would have been different. His *Rehaif* argument, especially in light of *Greer*, does not provide a basis for establishing "extraordinary and compelling reasons" warranting relief. *Rehaif* and *Greer* are founded on legal analysis rather than factual innocence. The legal analysis is significant but is not an "extraordinary and compelling" reason for relief.

Further, the Court is similarly unpersuaded by Cyrus's claim of actual innocence. Actual innocence means *factual* innocence, not legal insufficiency. *See United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999). "Typically, to establish actual innocence a petitioner must demonstrate actual

10

factual innocence of the offense of conviction, *i.e.,* that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Id.* (citing *Sawyer v. Whitley,* 505 U.S. 333, 339–41(1992)). There is no factual dispute that a search of Cyrus's home uncovered six (6) firearms and numerous rounds of ammunition stored throughout the property. This evidence was presented by the Government at trial, and ultimately produced a guilty verdict. ECF No. 62. Thus, his claim of actual innocence fails because he is, in fact, not factually innocent.

ii. The appropriateness of Cyrus's sentence

Although the length of a defendant's sentence is usually addressed when weighing the relevant § 3553(a) factors, the Court will address it in this section since it has been raised by Cyrus, who asserts that his sentence is not appropriate when compared to the plea offer he rejected. ECF No. 165 at 2. The length of his sentence, he suggests, constitutes an "extraordinary and compelling reason" warranting a reduction in his sentence. *Id.* In considering this portion of Cyrus's argument, the Court has studied both the record and the relevant caselaw, including the Fourth Circuit's recent decision in *United States v. Brown*, No. 21-7752, 2023 WL 5257673 (4th Cir. Aug. 16, 2023), which states that a "disparate sentence is relevant to. . . the extraordinary and compelling reasons inquiry." Accordingly, the Court will apply the "extraordinary and compelling reasons" standard to Cyrus's claim and notes the relevance of such an argument to the "extraordinary and compelling reasons inquiry."

District courts have no role in the plea-bargaining process, though the Court recognizes that plea bargaining may occur in criminal cases. In some cases, plea bargaining may result in a sentence that is lower than the sentences of individuals who take their cases to trial, though that is not always the case. The Court acknowledges that there may be some give and take as to sentencing, particularly when a defendant, in exchange for more favorable terms at sentencing, agrees to admit guilt, allowing the government to conserve valuable prosecutorial resources. *See generally Missouri v. Frye*, 566 U.S. 134, 144 (2012).

Here, Cyrus, by his own admission, chose not to enter into a plea agreement with the Government, opting instead to go to trial. ECF No. 48. That is his constitutional right – the Court will not speculate as to his motivations for going to trial or his rationale for choosing not to negotiate a plea. Following a jury trial, Cyrus was found guilty of being a felon in possession of a firearm. ECF No. 62. Thereafter, Cyrus was sentenced to three hundred twenty-four months (324), the low end of the applicable Guidelines range. ECF No. 72. There is nothing in the record to support Cyrus's contention that his sentence was enhanced based on his decision to go to trial. That assertion has no merit. He was sentenced to the low end of the applicable Guidelines range following his conviction. Having reviewed the record before it, the Court concludes that the length of Cyrus's sentence, imposed pursuant to the applicable Guidelines range, does not constitute an "extraordinary and compelling reason" warranting a reduction in his sentence. However, noting the recent decision of the Fourth Circuit in *United States v. Brown*, No. 21-7752, 2023 WL 5257673 (4th

Cir. Aug. 16, 2023), the Court will assume that the length of Cyrus's sentence constitutes an "extraordinary and compelling reason" such that relief could be granted. Accordingly, the Court will proceed to a full analysis of the applicable § 3553(a) factors.

> iii. <u>Cyrus's underlying medical conditions coupled with the risks posed by the COVID-19 pandemic</u>

The primary thrust of Cyrus's motion is that the § 3553(a) factors weigh in favor of relief, and that the Court should grant relief on those grounds. However, the Court is required to first give fair consideration to whether Cyrus has also met the "extraordinary and compelling reasons" standard based on his medical circumstances. Cyrus asserts that he is "aging rapidly," and states that his medical records show that he is deteriorating and in need of daily medical care. ECF No. 165 at 5. Specifically, he states that he suffers from "high blood pressure and asthmas among a plethora of other serious medical conditions, for which he takes medication daily." *Id.* at 5. He also states that he has "cataracts in his eye(s), high cholesterol and suggested kidney disease." *Id.* at 5. Cyrus asserts that the COVID-19 pandemic is a "fear and reality" that he is "particularly susceptible" to. *Id.* at 6. Cyrus argues that he meets the "extraordinary and compelling" reasons burden as he is over sixty-five (65) years old, has served at least ten (10) years in prison, and is experiencing "serious deterioration due to the aging process." *Id.* at 19. On these asserted facts, the Court concludes that Cyrus has satisfied the "extraordinary and compelling reasons" standard. Cyrus presents several risk factors identified by the Centers for Disease Control and Prevention as posing an increased risk of an adverse outcome from

13

COVID-19. His risk factors are hypertension, diabetes, obesity, and hyperlipidemia. ECF No. 165-C. The medical records also reflect that Cyrus has seen medical personnel on numerous occasions and that he is prescribed medications to treat his conditions. *Id.* The Court notes that Cyrus has not provided persuasive evidence that he faces a significant risk from COVID-19 alone and emphasizes that he is being provided appropriate medical care and treatment for his conditions by the Bureau of Prisons.

In summary, having considered all the circumstances and arguments raised by Cyrus, the Court concludes that his current medical conditions and the COVID-19 pandemic, when considered together, establish a basis to conclude he satisfies the "extraordinary and compelling reason" standard.[1]

        iv.    <u>Cyrus's contention that he has been rehabilitated and the § 3553(a) factors weigh in his favor</u>

Finally, Cyrus argues that his time in prison has shown him to be a "person of noble and upstanding character." ECF No. 165 at 3. In making this argument, he contends that the § 3553(a) factors weigh in favor of his release. The Court will address this contention and the appropriate application of the § 3553(a) factors in considerable detail in the ensuing section.

    **B.**    *The Court's Review of the § 3553(a) Factors*

As stated, Cyrus has provided a basis upon which the Court could conclude he meets the "extraordinary and compelling reason" standard based on his medical

---

[1] The Court also notes, as acknowledged in the Government's brief, that the BOP began administering COVID-19 vaccines to inmates and staff in January 2021. According to BOP records, Devens USP (Cyrus's facility) has fully inoculated 633 inmates and has only 1 open case.

14

conditions and the length of his current sentence. However, the Court concludes that his motion should be denied based on an analysis and balancing of the § 3553(a) factors. Cyrus was convicted of a serious offense. His offense conduct is set forth in paragraphs 6-37 of the PSR. The Court incorporates those paragraphs (¶¶ 6-37) by reference into this order. His conduct related to possession of firearms and ammunition was significant, as outlined in these paragraphs. It is imperative that those paragraphs be considered in light of Cyrus's request for relief. This information weighs heavily against release or a reduction in sentence. Cyrus's guideline calculation in the PSR provide information regarding the significance of his conduct in connection with the federal conviction. *See* PSR ¶¶ 41-53. The enhancements warrant discussion here. He received a two (2) level enhancement for possessing six (6) firearms, a four (4) level enhancement for using a firearm in connection with a felony offense, a cross-reference for possessing a firearm or ammunition in connection with the commission of another offense (81.7g of crack cocaine), two (2) levels for possessing a dangerous weapon, and a two (2) level enhancement for obstruction of justice based on threats made against the investigating FBI agent, three AUSAs who prosecuted the case against him, and a Government witness whom he threatened to kill. PSR ¶¶ 42-49. He was also "an armed career offender." PSR ¶ 51.

In considering whether to reduce Cyrus's sentence, the Court has carefully reviewed the PSR and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutes, the § 3553(a) factors, and his post-sentencing conduct. In light of those considerations, the Court concludes that Cyrus has failed to

15

establish that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) the seriousness and violent nature of the instant federal offenses, and (2) his extensive criminal history, which includes violent conduct and demonstrates an ongoing and continuous disrespect for the law and for the safety of others.

When considering the § 3553(a) factors, it is appropriate to highlight the defendant's criminal history. Prior to Cyrus's present federal convictions, for which he is currently incarcerated, he was convicted of additional conduct which was both serious and violent: (1) aggravated assault and battery in 1977 (The PSR states "Cyrus shot Ernest Gordon in the leg with a .22 caliber pistol.") for which he was sentenced to sixty (60) days imprisonment and three (3) years' probation; (2) driving under suspension and possession of a controlled substance in 1984, for which he was sentenced to ninety-one (91) days' imprisonment and six (6) months' probation; three (3) counts of trafficking cocaine and one (1) count of criminal conspiracy in 1985, for which he was sentenced to twenty-five (25) years and a $50,000.00 fine; (4) driving under the influence in 2000, for which he was fined $637.00; and (5) driving under the influence in 2001, for which he forfeited a $637 bond. PSR ¶¶ 55, 56, 57, 58, and 60. The details of those numerous convictions and resulting sentences are set forth in the PSR, though the Court notes that Cyrus was sentenced to twenty-five (25) years' imprisonment in relation to his 1985 convictions for trafficking in cocaine and criminal conspiracy to traffic in cocaine. This significant state sentence did not deter Cyrus from committing additional crime which culminated in his federal convictions.

The Court concludes that Cyrus's criminal history weighs against release.

The Court also concludes that "the nature and circumstances of the offense" weigh heavily against release. The full facts of the instant offense are outlined in paragraphs 6-37 of the PSR. Again, the Court will not restate all the facts here but will highlight the more significant details. The Federal Bureau of Investigation – Florence Division and the Pee Dee Violent Crime Task Force launched an investigation into Cyrus in 2001, following interviews with multiple individuals who reported buying drugs from Cyrus. PSR ¶¶ 6-12. The investigation of Cyrus further revealed that he frequently conducted drug transactions while carrying firearms, and multiple reports indicated that he had numerous firearms in his home. PSR ¶¶ 6-12. Following an investigation of Cyrus, federal authorities executed a search warrant at his residence which resulted in the recovery of a half-dozen firearms and a large amount of ammunition along with drugs and drug distribution paraphernalia. PSR ¶ 14. Following his arrest and while his case was pending, Cyrus made threats against the lead FBI agent and three Assistant United States Attorneys who were working on his case. PSR ¶¶ 27-28. He also made threats, including death threats, to multiple witnesses in the case. PSR ¶¶ 32-37. These threats are of significant concern for the Court. Additionally, the Court notes that Cyrus received multiple enhancements, including enhancements for possessing six firearms, use of a firearm in connection with a felony offense (possession of powder cocaine), possession of a dangerous weapon in connection with the offense, and obstruction of justice.

The record reflects that Cyrus repeatedly committed serious criminal offenses

17

from the time he was 24 years old. His conduct demonstrates his disrespect for the law and his propensity to engage in serious criminal conduct. A review of the instant offense and Cyrus's criminal history leads the Court to the inescapable conclusion that § 3553(a)(2)—the need for the sentence imposed—weighs against release. Cyrus's sentence was and is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant. The Court concludes Cyrus poses a danger to the public and to those who were involved in the investigation and prosecution of his instant federal offenses. Specifically, he poses a continuing danger to those he threatened, including the AUSAs who prosecuted him, the FBI agent who investigated the case, and the witnesses who cooperated against him.

As noted, Cyrus was deemed an "armed career criminal" within the meaning of U.S.S.G. § 4B1.4. PSR ¶ 5. Whether he would remain a career offender under current law does not change this Court's conclusion that no relief is warranted under 18 U.S.C. § 3582(c)(1)(A)(i). Cyrus was convicted of a serious federal offense. His significant conduct has been outlined in this order as set forth in the Presentence Investigation Report. As to his prior record, he was convicted of aggravated assault and battery after shooting an individual with a .22 caliber pistol. PSR ¶ 55. He was sentenced to twenty-five (25) years on two state drug convictions based on trafficking cocaine. PSR ¶ 57. This conduct weighs against relief whether or not Cyrus is a Guidelines career offender. His three hundred and twenty-four month (324) sentence

is appropriate in light of the instant federal offense, his extensive prior record, and the danger he poses if released.

## CONCLUSION

The Court acknowledges the legitimate concerns based on the ongoing COVID-19 pandemic and its potential impact on those incarcerated, regardless of health status. The BOP has taken significant measures to protect the health of all inmates due to COVID-19. These measures include offering COVID-19 vaccines to every defendant in BOP managed facilities.

As stated above, in light of the violent and serious nature of the instant offense and Cyrus's criminal history, the sentence imposed was necessary to reflect the seriousness of the offense and to protect the public from further crimes committed by Cyrus. The Court's § 3553(a) analysis counsels that release is not warranted. The Court concludes it is appropriate to require Cyrus to serve the remainder of the sentence imposed. In sum, Cyrus was a significant offender, who poses a threat to the public, and those he threatened with harm while being prosecuted, if released.

In light of the seriousness of the instant offense, Cyrus's significant criminal history, and his disciplinary issues while incarcerated, the Court finds that the § 3553(a) factors weigh against release. Accordingly, his compassionate release motion, ECF No. 165, is **DENIED**.[2]

---

[2] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g., United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

**IT IS SO ORDERED.**

                                                                *s/ Terry L. Wooten*
                                                                Terry L. Wooten
                                                                Senior United States District Judge

September 8, 2023
Columbia, South Carolina